UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HEATHER RENEE HAACK,

          Plaintiff,                        Case No. 2:16-CV-14304
                                            District Judge Paul D. Borman

v.                                        Magistrate Judge Anthony P. Patti

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.
_____/

## RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 13) AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 17)

**I.**    **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 13), **GRANT** Defendant's motion for summary judgment (DE 17),

and **AFFIRM** the Commissioner's decision.

**II.**    **REPORT**

      Plaintiff, Heather Renee Haack, brings this action under 42 U.S.C. § 405(g)

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her applications for social security disability insurance

(DI) benefits and supplemental security income (SSI) benefits. This matter is

before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (DE 13), the Commissioner's cross

motion for summary judgment (DE 17) and the administrative record (DE 10).

### A.    Background

Plaintiff initially filed an application for DI benefits on June 29, 2009,

alleging that she had been disabled since May 22, 2009.  Administrative Law

Judge (ALJ) Mary Ann Poulose issued a decision denying benefits in a decision

dated April 21, 2011.  (R. at 165-80.)   Plaintiff reapplied for DI and SSI benefits

on August 21, 2012, alleging an onset date of April 22, 2011.  (R. at 322-34.)  In a

decision dated November 29, 2013, ALJ Melvyn Kalt granted Plaintiff a closed

period of disability.  (R. at 215-33.)   However, the Appeals Council vacated the

decision and remanded the case for a *de novo* hearing.  (R. at 236-40.)

ALJ Patricia S. McKay held a hearing on June 17, 2015, at which Plaintiff

was represented by counsel.  (R. at 65-164.)  ALJ McKay determined that

Plaintiff's condition had worsened since the first decision by ALJ Poulose,

warranting a change in her severe impairments as well as her residual functional

capacity, but that the findings regarding her past relevant work still apply and thus

were adopted.  (R. at 17-18.)  On July 28, 2015, ALJ McKay determined that

Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 14-

31.)  Plaintiff requested review of the decision on September 11, 2015, and

submitted additional medical evidence.  (R. at 7-13, 665-73.)  On October 27,

2

2016, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.) Thus,

ALJ McKay's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on December 9, 2016,

and filed an amended complaint on January 13, 2017. (DEs 1, 5.)

### B.    Plaintiff's Medical History

Plaintiff's combined medical records span the period from January 22, 2010

through June 16, 2015, and generally include complaints of neck pain, headaches,

and a history of a cerebral vascular accident (CVA) and seizure disorder. (R. at

443-673.) The 230 pages of medical records are mostly comprised of hospital and

treatment records from a number of health care providers as well as diagnostic

tests, and also include medical source statements from Plaintiff's treating

physicians, Dr. Shaun Syron and Dr. Martin Belkin, and opinion evidence by State

agency medical reviewing consultants Dr. Thomas Tsai and Dr. B.D. Choi.  These

records will be discussed as necessary below.

### C.    Hearing Testimony

Plaintiff testified at the June 17, 2015 hearing before ALJ McKay.  (R. at 80-

119.)  Plaintiff's father, John Skiba, and vocational expert Pauline Pegram-Wargel

also provided testimony. (R. at 120-62.) The hearing testimony will be cited as

necessary below.

### D.    The Administrative Decision

3

On July 28, 2015, ALJ McKay issued an "unfavorable" decision.  At **Step 1** of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 22, 2011, the alleged onset date.  (R. at 20.) At **Step 2**, the ALJ found that Plaintiff has the following severe impairments: history of cerebral vascular accident with left side hemiparesis and migraines, seizure disorder, and degenerative disc disease of the cervical spine and herniations.  (R. at 20-21.) At **Step 3**, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  (R. at 21.) Prior to **Step 4** of the

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.  Is the claimant engaged in substantial gainful activity?
2.  Does the claimant suffer from one or more severe impairments?
3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

sequential process, the ALJ determined that Plaintiff has the residual functional

capacity ("RFC")[2] to:

> perform light work … except she is limited to occasional fine
> fingering with the bilateral upper extremities; occasional foot controls
> with the bilateral lower extremities; and, occasional climbing of stairs,
> crouching, crawling, kneeling, stooping/bending. She must avoid
> workplace hazards such as moving machinery, unprotected heights,
> and climbing of ladders, ropes, and scaffolding. Additionally, she is
> unable to perform production-rate work, but she can perform self-
> paced work, provided she is not working in team/tandem with co-
> workers; she is limited to low stress jobs with only simple decision
> making.

(R. at 21-25.) At **Step 4**, the ALJ concluded that Plaintiff is not disabled because

she is capable of performing past relevant work as a store laborer as it was actually

performed by Plaintiff. (R. at 25-26.) ALJ McKay therefore concluded that

Plaintiff has not been under a disability, as defined by the Social Security Act,

from April 22, 2011 through the date of the decision. (R. at 26.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

---

[2] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

5

standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). "Substantial evidence supports a decision if 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' backs it up." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."); *Richardson*, 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). Furthermore, the claimant "has the ultimate burden to establish an entitlement to benefits by proving

6

the existence of a disability." *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Biestek*, 880 F.3d at 783 ("[A] decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence.") (citing *Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 395 (6th Cir. 2010)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*,

582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

Plaintiff claims that the ALJ erred in finding that: **(1)** depression was not a medically determinable impairment; **(2)** Plaintiff's impairments do not meet or medically equal a listing; and **(3)** Plaintiff was capable of performing her past relevant work as a store laborer.  (DE 13 at 11-23.) The Commissioner opposes Plaintiff's motion, asserting that substantial evidence supports the Commissioner's decision.  (DE 17 at 6-17.)  I will address each argument in turn.

### 1.    The ALJ's Step 2 Determination

At Step 2 of her analysis, the ALJ determined that Plaintiff had the following severe impairments:  history of cerebral vascular accident with left side hemiparesis and migraines, seizure disorder, and degenerative disc disease of the cervical spine and herniations.  (R. at 20-21.)  However, she found that a number of other conditions mentioned in Plaintiff's medical records "do not cause more than minimal functional limitations, either alone or in combination" and thus are classified as "nonsevere," and that depression is not a medically determinable impairment.  (*Id.*)  Specifically, the ALJ stated at her Step 2 determination that:

> During the hearing, the claimant testified that she experiences
> symptoms related to depression.  However, there is no evidence of a
> formal diagnosis of depression, nor is there any indication in the
> record that the claimant sought or received treatment of any kind for

depressive symptoms.  The claimant even reported to her primary care
physician that she does not think she is depressed or anxious (Exhibit
4F).  Therefore, depression is not a medically determinable
impairment.

(R. at 20-21.)

Plaintiff disagrees with the ALJ's finding that depression is not a medically

determinable impairment.  (DE 13 at 11-14.)  In support of her argument, Plaintiff

cites to a June 22, 2012 treatment note from her treating doctor which states:  "The

only change was there is recommendation to add Cymbalta as she had recent

neuropsychological testing which did imply a definite mood disorder." (DE 13 at

12, citing R. at 510 (noting in the immediately preceding sentence that "Clinically,

she was quite stable and all her symptoms are fairly well controlled.").)  Plaintiff

explains that her doctor was likely referring to the May 1, 2012,

neuropsychological examination by Michael Ransom, Ph.D., which she claims

contains a diagnosis of depression.  (DE 13 at 12, citing R. at 454-55.)  However,

Dr. Ransom did not diagnose Plaintiff with depression, but instead wrote that

Plaintiff's "*self-report* measure of psychological functioning" "suggest[s]" that she

is "*likely* experiencing symptoms of depression[.]"   (R. at 454.)  This inconclusive

statement in Dr. Ransom's report does not constitute a diagnosis of depression, and

he never treated her for depression.

I note that some of Dr. Belkins's treatment notes do contain references to

prescribing Cymbalta and/or Effexor for Plaintiff's "mood," but that some of these

9

notes indicate that these medications also aid with Plaintiff's neck pain and headaches, and that her mood is described as "well-controlled." (*See, e.g.*, R. at 546, 550, 583-84, 586, 589, 617, 621, 634.) In any event, as the Commissioner points out, Plaintiff's treating physician, Dr. Belkin, never listed depression among Plaintiff's diagnoses in the Assessment/Impression section of his notes, where he did generally list "history of remote right middle cerebral artery territory ischemic infarction due to right internal carotid artery stenosis and cerebral aneurysm," "neck pain and upper extremity pain" and "episodic migraine." (DE 17 at 7, citing R. at 549, 551, 584, 586-87, 619, 623, 627, 630, 633, 639.) Moreover, there is no indication in those records or Plaintiff's testimony that she suffered from <u>any</u> functional limitations related to depression, much less any functional limitations in excess of those found by the ALJ in her RFC. It is well settled in the Sixth Circuit that "the mere diagnosis of an impairment does not render an individual disabled nor … reveal anything about the limitations, if any, it imposes upon an individual." *See McKenzie v. Comm'r of Soc. Sec.*, No. 99-3400, 2000 WL 687680, at *5 (6th Cir. May 19, 2000); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of [a condition], of course, says nothing about the severity of the condition.").

The ALJ properly noted that Plaintiff did not seek any mental health treatment, and that she told Dr. Shaun Syron in July 2012 that she "isn't convinced

she's depressed [and] she feels she still enjoys her life" and while "she does feel that she is anxious[,] she state[s] she thinks she is able to cope with it." (R. at 20-21, 502.) A mental status exam performed that same day noted Plaintiff was "[o]riented X3 with appropriate mood and affect" and "[i]nsight is appropriate concerning matters relevant to self." (R. at 504.) Although Plaintiff argues that she did not seek mental health treatment because "taking care of her children prevente[ed] her from [doing so,]" (DE 13 at 12), as the Commissioner points out, she repeatedly attended treatment for her other impairments, demonstrating her "ability to obtain medical treatment when necessary." *See Van Heck v. Comm'r of Soc. Sec.*, No. 06-15233, 2008 WL 18008320, at *6 (E.D. Mich. Apr. 21, 2008) (rejecting plaintiff's argument that he could not afford treatment where "the record demonstrates Plaintiff's ability to obtain medical treatment when necessary").

At Step 2 of the sequential evaluation process, it is the claimant's burden to demonstrate that she suffers from a severe impairment. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). In the Sixth Circuit, "the severity determination is 'a *de minimis* hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education and experience." *Higgs*, 880 F.2d at 862. The test is used to "screen out totally

11

groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). However, the Step 2 severity analysis is simply a threshold determination. Sixth Circuit precedent readily establishes that failure to find an impairment severe at Step 2 of the sequential analysis is not reversible error if the ALJ found another impairment severe and thus continued with the five-step evaluation. *See e.g., Fink v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007); *Anthony*, 266 F. App'x at 457. "The fact that some of [the plaintiff's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony*, 266 F. App'x at 457; *accord Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F.Supp.2d 792, 822-23 (E.D. Mich. 2013) ("any alleged omission from the list of severe impairments does not undermine the ALJ's decision" so long as the ALJ considers Plaintiff's "severe and nonsevere impairments in the remaining steps of the sequential analysis") (citation omitted).

Despite finding that depression was not a medically determinable impairment, ALJ McKay thoroughly considered "the entire record," including the medical evidence of record, Plaintiff's function report submitted in connection with her claim for disability benefits, and her and her father's testimony, in reaching her determination. The ALJ expressly considered the neuropsychological examination of Plaintiff by Dr. Ransom, which Plaintiff relies upon to establish medical evidence of depression. She explained that, based on Plaintiff's

12

"allegations of reduced cognitive functioning as well as the results from [Dr. Ransom's] testing[,]" she included in the RFC a limitation of "low stress jobs with only simple decision making" and provided that Plaintiff "is unable to perform production-rate work, but she can perform self-paced work provided she is not working in team/tandem with co-workers[.]"  (R. at 21.)  None of Plaintiff's treatment providers opined that this condition created any functional limitations for Plaintiff.  Plaintiff does not point to any additional restrictions that would have been included in the RFC had the ALJ more specifically listed depression as a severe impairment in her written determination, and accordingly her challenge to the ALJ's Step 2 determination fails.  "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507 (6th Cir. 2006) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)); *see also Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (noting that in such instances courts are not required to "convert judicial review of agency action into a ping-pong game") (citation omitted).  Because the ALJ's ultimate conclusion at Step 4 would not change, Plaintiff's claim of error is denied.[3]

---

[3] In the final sentence of this argument, Plaintiff suddenly makes the blanket assertion that: "At a minimum, [her] depression medically equals the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (DE 13 at

13

## 2.    The ALJ's Step 3 Determination

Plaintiff argues that the ALJ erred in failing to find that her impairments

meet or equal Listings 1.04 and 11.02.  (DE 13 at 15-17.)  She contends that her

neck impairment is "medically equivalent to Listing 1.04" because she has neck

pain from her fall, and a herniated disc in her cervical area, and the ALJ noted that

her neck pain alone was enough to limit her functioning to a job that would require

a "light level of exertion."   (*Id.* at 15-16.)  She also asserts that her seizure

impairment is medically equivalent to Listing 11.02 because she contends she has

marked limitations is several areas of functioning as a result of "her stroke,

concussion, fall down the stairs, and her seizures."  (*Id.* at 17.)  The Commissioner

responds that the ALJ's Step 3 finding is supported by substantial evidence,

including the opinion of Dr. B.D. Choi, the State agency physician, and that

Plaintiff did not meet her burden to establish all of the required elements of

Listings 1.04 and 11.02.  (DE 17 at 9-12, citing R. at 194-96.)

---

14.)  However, she fails to develop this argument, and it is deemed waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones."); *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *United States v. Williams*, 877 F.2d 516, 518-19 (7th Cir. 1989) ("It is not the obligation of this court to research and construct the legal arguments open to the parties, especially when they are represented by counsel.").  The only thing which is "at a minimum" is the argument itself.

A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that she is disabled at Step 3 of the sequential evaluation process.  *See* 20 C.F.R. § 404.1520; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 855 (6th Cir. 1986).  The claimant has the burden to prove that all the elements are satisfied.  *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984).  Moreover, "[t]he burden of providing a … record … complete and detailed enough to enable the Secretary to make a disability determination rests with the claimant."  *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  It is not sufficient to come close to meeting the conditions of a Listing.  *See, e.g., Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision affirmed when medical evidence "almost establishes a disability" under Listing).

The ALJ here found that Plaintiff's impairments do not meet or medically equal the severity of Listings 1.04 (Disorders of the Spine), 11.02 (Convulsive epilepsy) and 11.03 (Nonconvulsive epilepsy).  (R. at 21.)  Although her argument is largely undeveloped, Plaintiff appears to challenge the ALJ's findings with respect to Listings1.04 and 11.02.[4]

---

[4] My Practice Guidelines for Social Security case and Local Rule 7.1 were not followed with respect to specifically identifying issues on appeal in the very beginning of the brief; nor were the rules followed with respect to identifying the "controlling or most appropriate authority for the relief sought."  Plaintiff's

### a.    Listing 1.04

Listing 1.04 provides, in pertinent part:

1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

The Commissioner concedes that Plaintiff has "degenerative disc disease with a herniated disc," but contends, correctly, that Plaintiff does not cite to any record evidence showing that the condition "result[s] in compromise of a nerve root," or evidence of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.  Rather, the MRI of Plaintiff's cervical spine showed "[n]o abnormal cord signal or reported compression" (R. at 493, 543), electrodiagnostic tests showed no cervical

---

counsel is forewarned that future non-complying briefs run the risk of being stricken.

radiculopathy (R. at 538), and examinations throughout the record generally show full muscle strength, range of motion, and no sensory deficits attributed to Plaintiff's neck impairment.  (R. at 467, 542, 545, 551, 584, 586, 619, 623, 626-27, 629-30, 633).

### b.    Listing 11.02

Plaintiff similarly does not demonstrate that her seizures meet or medically equal the criteria of Listing 11.02, which requires a showing of "convulsive epilepsy … documented by detailed description of a typical seizure pattern, including all associated phenomena; *occurring more frequently than once a month in spite of at least 3 months of prescribed treatment*."  20 C.F.R. Pt. 404, Subpt. P, App.1, § 11.02 (emphasis added).  As the ALJ recognized, the record evidence establishes that Plaintiff has remained seizure-free the entire period at issue, except for the June 2012 episode, which appears to have been triggered by sub-therapeutic medication levels. (R. at 22, 456, 550 583, 586, 588, 617, 621, 625.)  Accordingly, Plaintiff has wholly failed to produce any evidence, as is her burden, to show that she meets or medically equals these listings, and her claim of error should be denied.  *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) ("[E]ven if these reasons failed to support the ALJ's step-three findings, the error is harmless, because Forrest has not shown that his impairments met or medically equaled in severity any listed impairment.").

17

3.     **The ALJ's Step 4 Finding that Plaintiff Could Perform Her Past Relevant Work as a Store Laborer is Supported by Substantial Evidence**

Plaintiff argues that the ALJ's Step 4 finding is contrary to the substantial evidence in the record because: (1) the store laborer position cannot be performed at the RFC assigned by the ALJ; and (2) the RFC is not supported by substantial evidence.  The Commissioner contents that both arguments fail, and the ALJ's Step 4 finding is supported by substantial evidence.

a.     **Work "as actually performed" versus DOT**

First, Plaintiff correctly points out that the Dictionary of Occupational Titles (DOT) classifies the store laborer position, DOT 922.687-058, as performed at the medium exertional level.  (R. at 25, 136.)  However, the vocational expert here testified that Plaintiff actually performed this position at the light exertional level (R. at 136-38), and the ALJ expressly found at Step 4, based on the testimony of the vocational expert, that Plaintiff "is able to perform the position of store laborer as it was actually performed by [Plaintiff]."  (R. at 25-26.)  Thus, because the vocational expert found that Plaintiff could perform her past relevant work as actually performed, any conflict with the DOT regarding how the job is generally performed is irrelevant.  *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987) (Commissioner may rely on the requirements of the job as the claimant performed it or on the requirements of the job as it is

18

generally performed in the national economy); *see also Johnson v. Comm'r of Soc. Sec.*, No. 10-14357, 2011 WL 5553823, at *6 (E.D. Mich. Oct. 31, 2011) ("Thus, if a claimant has the RFC to work at his or her past job as actually performed (even if that particular job is less demanding than the work as generally performed or even if it involves fewer hours or greater opportunity for rest), he or she will be found not disabled a step four."), *report and recommendation adopted*, 2011 WL 5553826 (E.D. Mich. Nov. 15, 2011).

**b.  RFC**

Second, Plaintiff contends that the ALJ's Step 4 finding is contrary to additional limitations allegedly "found" by the ALJ, which she claims are work preclusive, according to testimony by the vocational expert.  Specifically, Plaintiff cites to Dr. Ransom's evaluation, her subjective allegations, and the testimony of her father as sources for the additional work-preclusive limitations she asserts should be included in her RFC.  The Commissioner responds that the ALJ's RFC determination and Step 4 finding are supported by substantial evidence.

It must be borne in mind that Plaintiff bears the burden of proof at Steps 1-4, including proving her RFC. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") *(citing Young v. Sec'y of Health and Human Servs.,* 925 F.2d 146, 148 (6th Cir.1990)); *Allen v. Califano,*

613 F.2d 139, 145 (6th Cir.1980); *Cole v. Sec'y of Health and Human Servs.,* 820

F.2d 768, 771 (6th Cir.1987)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d

417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving

her lack of residual functional capacity").  The Commissioner has the burden of

proof only on "the fifth step, proving that there is work available in the economy

that the claimant can perform."  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92

(6th Cir. 1999) ("To require the Commissioner to prove a claimant's RFC at step

five is essentially to partially shift the burden of proof required of a claimant at

step four to the Commissioner.").  However, "[t]he Social Security Act instructs

that the ALJ—not a physician—ultimately determines a claimant's RFC."

*Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42

U.S.C. § 423(d)(5)(B)).

Plaintiff's RFC is "the most [she] can still do despite the physical and mental

limitations resulting from [her] impairments."  *Poe v. Comm'r of Soc. Sec.*, 342 F.

App'x 149, 155 (6th Cir. 2009); s*ee also* 20 C.F.R. §§ 404.1545(a), 416.945(a).

The determination of Plaintiff's RFC is an issue reserved to the Commissioner and

must be supported by substantial evidence.  20 C.F.R. §§ 404.1527(e), 416.927(e).

"'ALJs must not succumb to the temptation to play doctor and make their own

independent medical findings.'"  *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x

181, 194 (6th Cir. 2009) (citation omitted).  Pursuant to Social Security Rule 96-

8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each
> conclusion, citing specific medical facts (e.g., laboratory findings) and
> nonmedical evidence (e.g., daily activities, observations).  In assessing
> RFC, the adjudicator must discuss the individual's ability to perform
> sustained work activities in an ordinary work setting on a regular and
> continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent
> work schedule), and describe the maximum amount of each work-
> related activity the individual can perform based on the evidence
> available in the case record. The adjudicator must also explain how any
> material inconsistencies or ambiguities in the evidence in the case
> record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *6-7. "Although SSR 96–8p requires a

'function-by-function evaluation' to determine a claimant's RFC, case law does

not require the ALJ to discuss those capacities for which no limitation is alleged."

*Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002).  Instead, the

ALJ '"need only articulate how the evidence in the record supports the RFC

determination, discuss the claimant's ability to perform sustained work-related

activities, and explain the resolution of any inconsistencies in the record."' *Id.*

(citations omitted).

The ALJ here thoroughly reviewed and considered Plaintiff's function

report, her hearing testimony, her father's hearing testimony, her daily activities,

the objective medical evidence, her treatment history, and the opinion evidence,

and found that Plaintiff was capable of performing a reduced range of light exertional work.  (R. at 21-25.)

### i.      Dr. Ransom's evaluation

Plaintiff points to the neuropsychological examination by Dr. Ransom as a source for additional limitations, but ALJ McKay expressly considered the results of Dr. Ransom's examination that:

> while the claimant was performing within normal limits on tests associated with information processing speed, verbal and visual learning and memory, her performance was variable across tests associated with attention and concentration, and she displayed generally poor executive functioning, as well as poor upper extremity motor abilities (Exhibit B2F).

(R. at 24, citing R. at 452-55.)  The ALJ then explained that:

> Based on the findings of this testing, along with the claimant's allegations, the undersigned has limited the claimant to work that is not production-rate work, but is rather self-paced work, provided she is not working in team/tandem with co-workers; and she is limited to low stress jobs with only simple decision making.

(R. at 24.)  While Dr. Ransom does include recommended work-place practices for Plaintiff in his evaluation, he does not identify any specific functional restrictions, and Plaintiff has failed to explain how Dr. Ransom's report *mandates* further restrictions than already found by the ALJ.  (See R. at 452-55.)

### ii.      Plaintiff's credibility and subjective complaints

To the extent Plaintiff alleges she is more limited than found in the RFC, the ALJ found the medical evidence of record does not support the degree of limitation

she alleged during the hearing and in her Function Report.  (R. at 21-25.)

Specifically, the ALJ found that:

> [T]he claimant does experience chronic migraine headaches, neck
> pain, and a seizure disorder, which in turn limit her functioning.
> However, her treatment notes, especially those of Dr. Belkin,
> document that these conditions are fairly well controlled, with
> occasional flare ups that require medication adjustments.  The
> claimant continues to perform at a high level of functioning as
> documented throughout the record.  For instance, she lives alone with
> her three young children, and lives completely alone when they are
> with their father.  Caring for children can be quiet demanding
> physically, and she even reported walking her children to school on
> days when she has custody (Exhibit 5E).  She also reports cooking,
> cleaning, shopping, and going out alone (Exhibit 5E).

(R. at 25.)  Plaintiff argues this evidence is not relevant because she performed

those tasks "in a weakened state" and "pushed through the pain."  (DE 13 at 20.)

However, the RFC is "*the most* you *can* still do *despite* your limitations," *Poe*, 342

F. App'x at 155, and the ALJ correctly noted that Plaintiff cared for her children,

cooked cleaned and shopped.  These activities support the ALJ's decision.  *See*

*Robinson v. Comm'r of Soc. Sec.*, No. 13-cv-13124, 2014 WL 4145339, at *8

(E.D. Mich. Aug. 20, 2014).

Plaintiff further argues that the ALJ was required to adopt her allegations in

full because she credited *some* of Plaintiff's complaints regarding her neck pain,

left sided numbness and loss of dexterity, despite objective evidence showing only

mild findings or the absence of radiculopathy or neuropathy.  (DE 13 at 21.)

However, as the Commissioner explains, no legal authority mandates an "all-or-

nothing" approach to credibility.  *See Love v. Astrue*, No. 1:12-1923, 2014 WL
4915998, at *9 (M.D. Pa. Sept. 30, 2014) ("We will decline this invitation to
impose an all-or-nothing approach upon ALJs when assessing questions of
credibility.  At the outside, we note that the ALJ is uniquely well-poised to make
these credibility assessments having actually met [the claimant] and observed her
testimony.  Moreover, as a legal matter [t]he ALJ has the right, as the fact finder,
to reject partially, or even entirely, [a claimant's statements] if they are not fully
credible.") (citation, punctuation, and quotations omitted).  Further limitations are
not supported by the record, and the ALJ was not required to include those
limitations in the RFC or in the hypothetical question that were not credible.  *See
Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013); *Casey v. Sec'y
of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).

I conclude that the ALJ's credibility assessment ─ which took into
consideration, *inter alia*, Plaintiff's treatment notes revealing that her conditions
are fairly well controlled, her daily activities and high level of functioning—is
supported by substantial evidence. "It is of course for the ALJ, and not the
reviewing court, to evaluate the credibility of witnesses, including that of the
claimant." *Rogers*, 486 F.3d at 247. The ALJ's "assessment of credibility is
entitled to great weight and deference, since [s]he had the opportunity to observe
the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir.

24

2008). It is for this reason that the ALJ's credibility findings have at times been

characterized as "unchallengeable." *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x

109, 113-14 (6th Cir. 2010); *see Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536

(6th Cir. 2001) ("A circuit court ... may not review a determination of credibility. It

is for the Secretary and his examiner, as the fact-finders, to pass upon the

credibility of the witnesses and weigh and evaluate their testimony.") (alteration

omitted). Moreover, "[d]iscounting credibility to a certain degree is appropriate

where an ALJ finds contradictions among the medical reports, claimant's

testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 537

(6th Cir. 1997). Plaintiff has failed to demonstrate that the ALJ's credibility

determination is flawed, and I find that the ALJ's credibility determination is

supported by substantial evidence.

### iii.     Testimony of Plaintiff's father

Finally, Plaintiff relies on the testimony of her father, John Skiba, to

establish additional RFC limitations.  (DE 13 at 22-23.)  The ALJ considered this

testimony and gave it little weight because it was "not entirely consistent with the

medical record, it appears to be somewhat speculative in nature, and he tended to

comment on issues that would be outside the expertise of a layman."  (R. at 24.)

Plaintiff only challenges the final reason, arguing that Mr. Skiba has been in

"personal contact" with her and that he "had been a supervisor of employees for 35

25

years," which she contends "means that he does have a specialized knowledge about work place accommodations for Plaintiff's types of limitations and the likelihood that such accommodations would be available." (DE 13 at 22-23.) However, contrary to Plaintiff's assertions, Mr. Skiba is a layman, and his opinions are not entitled to any deference. *See Johnson v. Comm'r of Soc. Sec.*, No. 1:15-cv-74, 2015 WL 9700957, at *4 (W.D. Mich. Dec. 15, 2015) ("Opinions expressed by non-treating sources such as Plaintiff's co-workers are not entitled to any deference and the ALJ is not required to articulate good reasons for discounting such."). Accordingly, the ALJ properly evaluated Mr. Skiba's testimony.[5]

Thus, I find that there is substantial evidence supporting the ALJ's RFC determination, and I find no error in the ALJ's Step 4 finding that Plaintiff was capable of performing her past relevant work as a store laborer, as she actually performed it. I note that an ALJ's decision cannot be reversed merely because there exists some other evidence in the record that might support a different conclusion. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 833 (6th Cir.

---

[5] Moreover, even if he were capable of being qualified as an expert, and ignoring any obvious concerns concerning bias or lack of objectivity, Plaintiff fails to enlighten the Court as to what types of employees her father actually supervised, or in what types of businesses he acted as a supervisor. So there is no foundational basis for believing that he offers any expert knowledge concerning his daughter's work setting or the functions of her job. (For example, did he ever supervise store laborers? We have no idea.) On the other hand, Plaintiff had no objection to the VE's qualifications. (R. at 135.)

2006) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion….  This is so because there is a 'zone of choice' within which the Commissioner can act without the fear of court interference.") (citation omitted); *see also Biestek*, 880 F.3d at 783 ("[A] decision supported by substantial evidence must stand, even if we might decide the question differently based on the same evidence.").  The instant decision is supported by substantial evidence, and accordingly, should stand.

### G.    Conclusion

In sum, the ALJ's opinion is supported by substantial evidence and is based upon a proper application of law.  Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 13), **GRANT** Defendant's motion for summary judgment (DE 17), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

27

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: March 1, 2018        s/Anthony P. Patti
                                   Anthony P. Patti
                                   UNITED STATES MAGISTRATE JUDGE

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 1, 2018.

s/Marlena Williams_____
In the absence of Michael Williams
Case Manager
